WILLIAM KAFFKA, Individually and as Executor of DORO-THY KAFFKA, Deceased, Respondent, v NEW YORK HOSPITAL et al., Appellants. [644 NYS2d 243]

The individual defendants, both physicians who had treated plaintiff's decedent at various times before her death from cancer, appeal from a judgment based upon a jury verdict which found that their negligence proximately caused a diminution of the life expectancy of the deceased, Dorothy Kaffka. We disagree with the IAS Court and hold the evidence to be legally insufficient to support the finding of Dr. Minick's liability. We further hold that the determination of Dr. Degann's liability was against the weight of the evidence.

Dr. Degann, an obstetrician, began treating Dorothy Kaffka on April 19, 1988, at which time Mrs. Kaffka was 41 years old and three months pregnant with her first child. A few weeks later Mrs. Kaffka noticed a swelling under her left arm, which she reported to Dr. Degann and, during a July 1988 visit, Dr. Degann manually examined the area and advised that at the end of pregnancy it would be a good idea to have a baseline

mammogram. Immediately after the birth of her daughter on October 21, 1988, Mrs. Kaffka's left breast became swollen, painful and inflamed. On or about October 31, 1988, Dr. Degann diagnosed Mrs. Kaffka as having a breast infection and she prescribed a lactation suppressant and antibiotics. However, the infection persisted throughout November 1988, accompanied by head and backaches. At the end of November, Dr. Degann referred Mrs. Kaffka to Dr. Eugene Nowak, a breast surgeon, at New York Hospital for further treatment.

Dr. Nowak removed tissue from Mrs. Kaffka's left breast and delivered samples to Dr. Minick, the director of surgical pathology at New York Hospital, for a biopsy. Dr. Minick examined slides of the samples on December 2, 1988, but did not find cancer cells. In March 1989, at Dr. Nowak's request, he reexamined the slides and located cancer cells possibly, he felt, because he knew by that time that Mrs. Kaffka had cancer. Mrs. Kaffka died on October 3, 1989.

No rational view of the evidence can support a finding that Dr. Minick's misdiagnosis, on December 2, 1988, proximately caused a diminution of Dorothy Kaffka's life expectancy. Expert testimony that Dr. Minick delayed diagnosis of cancer does not establish causation when uncontested evidence shows that, by the time of his examination, Mrs. Kaffka's cancer had already metastasized to the bone and liver, tragically sealing her fate. In the absence of additional evidence, a finding of proximate cause can only be seen as speculation.

While the evidence that Dr. Degann was negligent was legally sufficient, that finding is against the weight of the evidence produced at trial. Despite the fact that Dr. Degann had an opportunity to diagnose Mrs. Kaffka's cancer months before she was seen by Dr. Minick, evidence that the cancer was in an advanced stage even at that early juncture was uncontested at trial. Furthermore, the jury's determination that, in the absence of negligence, Mrs. Kaffka would have lived for five more years was impermissibly speculative. The same expert who testified that sufferers of inflammatory breast cancer might survive that long also testified that those statistics did not apply to cases like this one, where the cancer had reached the patient's spine and had become resistant to chemotherapy. Concur—Rosenberger, J. P., Wallach, Rubin and Kupferman, JJ.