Diaz v Katz (2026 NY Slip Op 50017(U))

[*1]

Diaz v Katz

2026 NY Slip Op 50017(U)

Decided on January 8, 2026

Supreme Court, Bronx County

Capella, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 8, 2026
Supreme Court, Bronx County

Jacqueline Diaz as Administrator of the 
 Estate of ROBERTO A. HERNANDEZ, deceased, and Jacqueline Diaz, Individually,

againstValerie Katz, M.D., SAMAN SAFADJOU, M.D., SYED RAZI, M.D., IRFANALI KUGASI, M.D., MARIA SPINIVASAN, M.D., ROBERT FRASER, M.D., GEORGE TRISTER, M.D., SAMUEL KIGONGO-MWESEZI, M.D., MARIANNE SACASA, M.D., SAMER AIDA, M.D., SARWAT KAMAL AMER, M.D., HUSANYN J. AL-HUSAYNI, M.D., and NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, Defendants.

Index No. 21634/2016E

Plaintiffs' Attorneys: Asher & Associates, P.C.Jennie Shatynski, Esq. 
111 John Street, 14th Floor 
New York, New York 10038 
(212) 227-5000Defendants' Attorneys: Furman Kornfeld & Brennan LLP 
Korina Rud, Esq. 
Wall Street Plaza88 Pine Street, 32nd FloorNew York, New York 10005(212) 867-4100

Joseph E. Capella, J.

The following papers numbered 1 to 9 read on this motion.
PAPERS NUMBEREDNOTICE OF MOTION, AFFIRMATION IN SUPPORT, MEMORANDUM OF LAW AND EXHIBITS 1, 2, 3, 4AFFIRMATION IN OPPOSITION, STATEMENT OF MATERIAL FACTS AND EXHIBITS 5, 6, 7REPLY AFFIRMATION AND EXHIBITS 8, 9UPON THE FOREGOING CITED PAPERS, THE DECISION IN THIS MOTION IS AS FOLLOWS:Motion by defendants, Valerie Katz, M.D., Saman Safadjou, M.D., Syed Razi, M.D., Irfanali Kugasi, M.D., Maria Spinivasan, M.D., Robert Fraser, M.D., George Trister, M.D., Samuel Kigongo-Mwesezi, M.D., Marianne Sacasa, M.D., Samer Aida, M.D., Sarwat Kamal Amer, M.D., Husanyn J. Al-Husayni, M.D., and New York City Health and Hospitals Corporation (collectively "defendants") for summary judgment (CPLR 3212) and dismissal of plaintiff's complaint, is granted. The complaint asserts claims for medical malpractice and wrongful death. In addition, there is a derivative claim for loss of services.[FN1]
In essence, the complaint alleged that on December 12, 2014, decedent was admitted to Lincoln Hospital for abdominal complaints and that defendants ignored and/or misdiagnosed decedent's complaints, signs, symptoms, findings and/or test results relating to meningitis and acute abdomen infection; failed to diagnose and appreciate decedent's condition and medical needs; improperly administered contraindicated medications, specifically opioid analgesics and morphine, resulting in significant conscious pain and suffering, total and complete loss of enjoyment of life and ultimately death.
The following facts are undisputed. On December 12, 2014, decedent was taken to Lincoln Hospital by way of EMS presenting with complaints of abdominal pain, nausea, vomiting, diarrhea, poor food intake for six days and lethargy for three days. At the emergency room, Dr. Marianne Sacasa, a resident, under the supervision of emergency department attending physician, Dr. Robert Fraser, took note of decedent's medical history and performed a physical examination. Thereafter, Dr. Sacasa ordered a chest x-ray and CT scan of decedent's abdomen, pelvis and head along with a battery of blood test. The CT scan indicated that the source of decedent's sepsis was within the abdomen, and it also ruled out any intracranial bleeding. Based on decedent's symptoms and lab results, Dr. Sacasa determined that decedent was likely septic and ordered two grams of Ceftriaxone be administered as a pre-emptive measure. Thereafter, decedent was sent for a second CT scan of his abdomen, pelvis and head. During the second CT scan decedent became hypoxic. In response, Dr. Sacasa and Dr. Fraser ordered a Rapid Sequence Intubation (RSI). Dr. Fraser then ordered a surgical consultation with the attending surgeon, Dr. Valerie Katz, who perform an exploratory laparotomy. On December 13, 2014, while in the SICU, decedent coded due to a cardiac arrest. During the cardiac arrest, Advanced [*2]Cardiac Life Support (ACLS) protocols successfully resuscitated decedent. Decedent then coded for a second time. ACLS protocols were again performed, and decedent was resuscitated. Thereafter, the attending surgeon, Dr. Samuel Kigongo-Mwesezi, administered various life-saving measures to decedent. Ultimately, decedent coded a third time and passed. 
As the movant, defendants bear the initial prima facie burden of showing an entitlement to summary judgment as a matter of law by tendering sufficient evidence to eliminate any material issues of fact. (Alvarez v Prospect, 68 NY2d 320 [1986].) If defendants make a prima facie showing, then the burden shifts to plaintiffs to produce evidentiary proof in admissible form sufficient to create issues of fact to warrant a trial, (Alvarez, 68 NY2d 320), and denial of summary judgment. In support of their motion, defendants submit three expert affirmations: (1) Dr. Grace Glassman, board certified in emergency medicine; (2) Dr. Stanley Yancovitz, board certified in internal medicine with a sub-certification in infectious disease; [FN2]
and (3) Dr. Marc Shapiro, board certified in surgery and surgical critical care. Dr. Glassman and Dr. Yancovitz opined that Dr. Sacasa and Dr. Fraser, appropriately placed sepsis with an abdominal source as the most likely etiology of decedent's presentation.[FN3]
Further, Dr. Glassman and Dr. Yancovitz opined that it was appropriate that Dr. Sacasa ordered two grams of Ceftriaxone as a pre-emptive measure, since Ceftriaxone is a broad-spectrum antibiotic recommended for treating suspected bacterial meningitis. Therefore, Dr. Glassman and Dr. Yancovitz concluded within a reasonable degree of medical certainty that neither Dr. Sacasa nor Dr. Fraser deviated from the accepted standard of care while treating decedent in the emergency department of Lincoln Hospital. Dr. Glassman and Dr. Yancovitz further concluded to a reasonable degree of medical certainty, that there was nothing the providers at Lincoln Hospital did or failed to do that caused or contributed to any of decedent's alleged injuries and death.
Based on the aforementioned, the court is satisfied that defendants met their prima facie burden for summary judgment, (Zuckerman v City of NY, 49 NY2d 557 [1980]; Kaffka v NY Hospital, 228 AD2d 332 [1st Dept 1996]), which now shifts to plaintiffs to demonstrate that issues of fact exist to warrant a trial. On the claim for medical malpractice, plaintiffs must come forward with a qualified expert(s) who can, inter alia, opine to a reasonable degree of medical certainty that defendants departed from the standard of care, (Canter v Mulnick, 93 AD2d 751 [1st Dept 1983]), and (emphasis added) that such departure was a proximate cause of decedent's injures. (Mortensen v Memorial, 105 AD2d 151 [1st Dept 1984].) Included in plaintiffs' [*3]opposition papers is an expert affirmation by a board certified infectious disease and internal medicine physician.[FN4]
Plaintiffs' expert opined that Dr. Sacasa departed from accepted standards of care by failing to: (1) formulate an appropriate differential diagnosis associated with acute appendicitis that included both immunosuppression and sepsis; (2) obtain "STAT" blood cultures; and (3) immediately order "STAT" administration of empiric Ceftriaxone, Piperacillin and Tazobactam. Plaintiffs' expert further opined that this failure to timely administer appropriate broad-spectrum antibiotics was a departure from accepted care. Thus, plaintiffs' expert concluded that if decedent had promptly received appropriate antibiotics, he would have never developed meningitis, which was a proximate cause of his injuries and death.
There is a striking omission in plaintiffs' attorney and expert affirmations in that they fail to address the apparent undisputed fact that Dr. Sacasa was a resident under the supervision of Dr. Fraser, the attending physician. It is well recognized that residents are essentially doctors in training under the supervision of an attending physician. And as defendants' highlight in their reply, residents under the supervision of an attending physician, who do not exercise any independent medical judgment, cannot be held liable for malpractice so long as the attending physician's directions did not so greatly deviate from normal practice that the resident should be held liable for failing to intervene. (Quille v NYC Health & Hospital, 152 AD3d 808 [2d Dept 2017]; Buchheim v Sanghavi, 299 AD2d 229 [1st Dept 2002].) The aforementioned departures alleged by plaintiffs in their opposition papers are exclusively attributed to Dr. Sacasa without any suggestion that Dr. Sacasa was exercising her own independent medical judgment. Nor do plaintiffs allege that Dr. Fraser's directions greatly deviated from normal practice that Dr. Sacasa should have intervened. As such, plaintiffs failed to raise issues of fact to warrant denial of defendants' summary judgment motion. Therefore, the summary judgment motion is granted, the action is dismissed, and the clerk is directed to enter judgment accordingly. This constitutes the decision of this Court, and defendants are directed to serve a copy of this decision with notice of entry upon all parties within 20 days of receipt of this decision.
Dated: 1/8/26Joseph E. Capella, J.S.C.

Footnotes

Footnote 1:It should be noted that as to plaintiffs' wrongful death and loss of services claims, it is well settled that said claims cannot be maintained in the absence of a viable underlying claim for medical malpractice. (Waters v Mt Sinai, 38 AD3d 257 [1st Dept 2007].)

Footnote 2:While Dr. Yancovitz' expert affirmation also included averments concerning the treatment rendered by Dr. Husayn J. Al-Husayni, Dr. Valerie Katz, Dr. Syed Razi and Dr. Saman Safadjou for purposes of judicial economy this court will focus solely on the averments concerning Dr. Sacasa as plaintiffs narrowed their medical malpractice claim to the treatment rendered by said physician. 

Footnote 3:Although Dr. Shapiro's expert affirmation did not directly address the treatment rendered by Dr. Sacasa, he opined that the established medical guidelines provide that the appropriate treatment for bacterial meningitis is the antibiotic, Ceftriaxone. Therefore, Dr. Shapiro concluded to a reasonable degree of medical certainty, that there is nothing the providers at Lincoln Hospital did or failed to do that caused or contributed to any of decedent's alleged injuries and death.

Footnote 4:Plaintiff's expert's name was appropriately redacted pursuant to CPLR § 3101(d)(1)(i).